UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REESHA M. RATCHFORD, o/b/o D.J.J.,

                Plaintiff,

v.                                                       1:19-CV-0605
                                                     (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      BRANDI SMITH, ESQ.
  Counsel for Plaintiff                              KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               JUNE BYUN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   MARC WARNER, ESQ.
  Counsel for Defendant                             MONIKA CRAWFORD, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 16.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

### A.     Factual Background

Claimant was born in 2003 and was an adolescent at the time of filing and at the time of the hearing.  (T. 74); 20 C.F.R. § 416.926a(g)(2).  Claimant's alleged disability consists of "behavioral issues."  (T. 74.)

### B.     Procedural History

On May 1, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf.  (T. 74.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On March 6, 2018, Plaintiff and Claimant appeared before the ALJ, Elizabeth Ebner.  (T. 40-56.)  On April 20, 2018, ALJ Ebner issued a written decision finding Claimant not disabled under the Social Security Act.  (T. 12-39.)  On March 11, 2019, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found Claimant was an adolescent at the time of filing and hearing pursuant to 20 C.F.R. § 416.926a(g)(2).  (T. 18.)  Second, the ALJ found Claimant had not engaged in substantial gainful activity since the application date.  (*Id*.)  Third, the ALJ found Claimant suffered from the severe impairments of intellectual disorder; conduct disorder; and attention deficit hyperactive disorder ("ADHD").  (*Id*.)  Fourth, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings").  (*Id*.)  Fifth, the ALJ found Claimant did

not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 26-36.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since May 1, 2015, the date his application was filed. (T. 36.)

## II.   THE PARTIES' BRIEFINGS

### A.   Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes one argument. Plaintiff argues the ALJ's domain findings were not supported by substantial evidence because the ALJ improperly relied on the stale medical opinions to support her domain findings and then afforded the same weight to the competing teacher opinions without adequately explaining why they were both entitled to some weight. (Dkt. No. 7 at 10-15.) Plaintiff filed a reply in which she reiterated her original argument. (Dkt. No. 15.)

### B.   Defendant's Argument

Generally, in support of his cross-motion for judgment on the pleadings, Defendant makes one argument. Defendant argues substantial evidence supported the ALJ's determination. (Dkt. No. 14 at 9-17.)

## III.   RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924.

At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. 20 C.F.R. § 416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three and examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for him or herself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or

an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

### IV. ANALYSIS

Plaintiff argues the ALJ was "not permitted" to rely on the opinions of a consultative examiner and non-examining State agency medical consultant in her domain findings because both opinions were rendered stale by "increased behavioral issues" and therefore neither opinion constituted substantial evidence. (Dkt. No. 7 at 10-15.) Here, the ALJ properly assessed the medical and other opinion evidence in the record and her decision was supported by substantial evidence.

In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially "in the context of mental illness" because "a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health." *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). Further, an "unsupported opinion, offered by [a] psychologist[] who never so much as examined [Plaintiff], is little more than *ipse dixit*." *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10-11 (2d Cir. 2020).

6

However, the "report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd,* 652 F. App'x 25 (2d Cir. 2016) (citing *Frye ex rel. A.O. v. Astrue,* 485 F. App'x. 484, 487 (2d Cir.2012)).  The regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016).

In addition, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille,* 104 F.Supp.3d at 343.  "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  A medical opinion may be stale if it does not account for the plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence.  *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, (2d Cir. 2020).

7

Here, the examining and non-examining consultative doctors were the only acceptable medical sources to provide opinions regarding Claimant's functional abilities. The record also contained teacher questionnaires, school records, medical treatment records, and testimony.  Teachers are not considered acceptable medical sources under 20 C.F.R. § 416.913(a), and therefore, their opinions are not entitled to controlling weight.  *Piatt v. Colvin,* No. 13-CV-6436, 80 F.Supp.3d 480, 493, (W.D.N.Y. Jan. 22, 2015); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 387 (W.D.N.Y. 2015) (stating that "[i]t is well established that teacher questionnaires are considered valid 'other source' opinions").

In September 2015 consultative examiner, Janine Ippolito, Psy.D., conducted psychiatric and intelligence testing, assessed an unspecified conduct disorder and ADHD, and provided a medical source statement.  (T. 288-292.)  In her medical source statement, Dr. Ippolito opined Claimant was able to: complete age-appropriate tasks; respond appropriately to changes in the environment; ask questions and request assistance in an age-appropriate manner; be aware of danger and take needed precautions; and interact adequately with peers with no evidence of limitations.  (T. 288, 292-293.)  Dr. Ippolito opined Claimant had the following limitations: a mild limitation in attending to, following, and understanding age-appropriate directions and learning in accordance to cognitive functioning; and a moderate limitation in maintaining appropriate social behavior and interacting adequately with adults.  (T. 288, 293.)

In September 2015, non-examining State agency medical examiner, Dr. J. Meyer, reviewed the medical evidence of record, including Dr. Ippolito's reports and opinion, and opined Claimant's severe and non-severe impairments would cause the

following degrees of limitation in the six domains of child functioning: a "less than marked" limitation in the domains of: Acquiring and Using Information; Attending and Completing Tasks; and Interacting and Relating with Others; and "no limitation" in the domains of Moving About and Manipulating Objects; Caring for Yourself; and Health and Physical Well-Being.  (T. 76-78.)  Dr. Meyer concluded Claimant did not functionally equal a listing.  (T. 78.)

There are no treating source statements or medical opinions from Claimant's providers; however, two teachers completed questionnaires.  In October 2015, Amy Pinker, Claimant's eighth grade English language arts ("ELA") teacher completed a Teacher Questionnaire.  (T. 203-210.)  Ms. Pinker stated Claimant's instructional reading and writing level was sixth grade, but Claimant's actual grade level was "8."  (T. 203.)  She noted Claimant was "absent a lot."  (*Id.*)  In the domains of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others, Ms. Pinker rated Claimant as having either "No Problem" or only "A slight problem" in each activity.  (T. 204-206.)  Ms. Pinker noted Claimant at times could be very independent and complete his work well, but at other times, "probably once a week," Claimant needed a lot of redirection and help to get assignments completed.  (T. 204.)  She wrote, "when [Claimant] is focused he can work quickly and get his work done, but that does not happen as often as I would like."  (T. 205.)  Ms. Pinker stated she did not observe Plaintiff having problems interacting and relating with others very often.  (T. 206.)  In the final three domains, Moving About and Manipulating Objects, Caring for Himself, and Medical Conditions and Medications/Health and Physical Well-Being, Ms. Pinker indicated Claimant had no problems at all.  (T. 207-209.)

In January 2017, Camilo Hoyos, Claimant's eighth grade social studies teacher, completed a Teacher Questionnaire.  (T. 227-237.)  Mr. Hoyos stated Claimant was "often absent, not sure exactly why." (T. 227.)  In the first domain, Acquiring and Using Information, Mr. Hoyos rated Claimant as having "No Problem" or "A slight problem" in three of the 10 areas, "An obvious problem" and "A serious problem" in four of the 10 areas, and "A very serious problem" in two of the areas (recalling and applying previously learned material and applying problem solving skills in class discussions).  (T. 228.)  Mr. Hoyos stated Claimant worked hard at individual assignments but seemed to have a hard time recalling information for examinations.  (*Id*.)  In the third domain, Interacting and Relating with Others, Mr. Hoyos stated Claimant had "Weekly" problems playing cooperatively with other children, expressing anger appropriately, and using language appropriate to the situation and listener, but had little or no problems with making and keeping friends, seeking attention appropriately, asking permission appropriately, respecting/obeying adults in authority, including and maintaining relevant and appropriate topics of conversation, taking turns in conversation, and other activities (T. 230.)  Notably, Mr. Hoyos stated that it had not been necessary to implement behavior modification strategies for Claimant.  (T. 230.)  In the domain of Caring for Himself, Mr. Hoyos noted Claimant seemed to have problems with personal hygiene. (T. 232.)  In the other three areas of functioning, Attending and Completing Tasks, Moving About and Manipulating Objects, and Medical Conditions and Medications/Health and Physical Well-Being, Mr. Hoyos indicated Claimant had no problems at all.  (T. 229, 231, 233.)

In evaluating the opinions in the record, the ALJ afforded Dr. Ippolito's opinion "some weight." (T. 25.) The ALJ stated she considered the doctor's opinion, report, and Claimant's IQ scores "in conjunction with the other evidence, including the hearing testimony of the claimant and his mother, the educational records describing the claimant's academic and disciplinary history, his treatment history, and the teacher's questionnaires of record." (*Id*.) The ALJ afforded Dr. Meyer's opinion "little weight;" however she noted she did not rely on the opinion in evaluating the Claimant's functioning. (T. 26.) The ALJ concluded Dr. Meyer provided his opinion two years prior to the hearing based on an incomplete record. (*Id*.) The ALJ noted, however, that the limitations she "independently assessed" were consistent with Dr. Meyer's conclusions. (*Id*.)

The ALJ afforded Mr. Hoyo's assessment "some weight." (T. 23.) The ALJ concluded Mr. Hoyo's assessments of Claimant's difficulties were "inconsistent" with his comments in Claimant's first quarter report card, where he noted Claimant was doing an "excellent job" and reported he had met "all behavioral and academic expectations for the current quarter." (T. 22, 215.) The ALJ also afforded "some weight" to Ms. Pinker's assessment. (T. 24.) The ALJ stated she considered Ms. Pinker's ratings and reports in the context of Claimant's disciplinary records and other academic information. (*Id*.) The ALJ further noted the disparity between the two teacher assessments. (*Id*.) The ALJ acknowledged the disparity could be due to Claimant's engagement and performance in different classes and subject matters and/or the style of instruction. (*Id*.) The ALJ stated she, "compared and balanced these questionnaires and have considered them in light of the other evidence of record, including the claimant's lack of

11

any meaningful mental health treatment, IEP, or special education services, in evaluating his overall functioning in each of [the] domains of functioning." (*Id*.)

Plaintiff argues Claimant's behavioral and attention problems worsened after the doctors rendered their opinions.  (Dkt. No. 7 at 10.)  In support of her argument, Plaintiff cites to evidence in the record that Claimant had five detentions and 14 school suspensions for disruptive behaviors and tardiness.  (*Id*. citing T. 220-223.)  However, Plaintiff's argument fails because the evidence cited by Plaintiff does not "directly contradict" the earlier rendered opinions and the ALJ analyzed the more recent evidence.  *Blash,* 813 F. App'x at 642.

To be sure, school records spanning 2015 through 2017 indicated Claimant had multiple detentions and suspensions.  However, Plaintiff fails to prove that additional detentions and suspensions constituted a worsening of Claimant's impairments.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record); *see Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018).

Drs. Ippolito and Meyer rendered their opinions in the fall of 2015.  (T. 78, 285.) During the 2015-2016 school year Claimant had ten detentions/suspensions.  (T. 222-223.)  The following school year, 2016-2017, Claimant had five detentions/suspensions, a decrease from the previous school year.  (T. 221.)  During the first half of the 2017-2018 school year Claimant had nine detentions/suspensions, an overall increase from the previous two school years.  (T. 221.)  Although a majority of the detentions/suspensions were for behavioral infractions, some were for tardiness and dress code violations.  (*See ex*. T. 221, 223.)

Of note, Plaintiff informed Claimant's primary care provider in April 2015 the school had not reported any concerns and Claimant was only "a little disruptive once and a while but overall doing well there." (T. 243.) In June 2015, Plaintiff reported Claimant was "doing well, still some anger and issues with emotion but has been doing well at school and no big incidents or concerns." (T. 237.) Therefore, overall the number of Claimant's disciplinary actions decreased the year after the doctors rendered their opinions and then subsequently increased. This information alone, does not "directly contradict" the opinions of Drs. Ippolito and Meyer. Further, the ALJ considered Claimant's academic records, including disciplinary records, in her assessment of Claimant's impairments.

Plaintiff makes the related argument the ALJ relied on her own lay opinion in making her domain findings because the medical opinions were "stale" and she did not adequately evaluate the teacher statements. (Dkt. No. 7 at 14-15.) As outlined above, the medical opinions were not rendered stale by subsequent disciplinary records and the ALJ properly assess the teacher opinions. In assessing Claimant's behavioral issues in the various domains, the ALJ considered not only the opinions rendered by Drs. Ippolito and Meyer, but also Claimant's academic record and testimony. The ALJ summarized and considered disciplinary records, grades, and lack of IEP. (T. 21.) For example, in the domain of interacting and relating with others, the ALJ noted Plaintiff's concerns with Claimant's behavior; however, Claimant ceased counseling appointments after June 2015. (T. 31-32.) The ALJ further noted Claimant did not receive further mental health treatment or prescribed any medication for his conduct disorder. (*Id*.) The ALJ considered the opinions of the consultative examiners and Claimant's

disciplinary record.  (T. 32.)  Concerning behavioral issues, the ALJ noted teacher statements indicating Claimant had a "slight problem" expressing anger appropriately, following rules and respecting and obeying adults in authority.  (*Id*.)  The ALJ also considered Plaintiff's testimony concerning Claimant's behavior at school and home.  (*Id*.)

The ALJ likewise properly assessed the evidence in the record in the other domains.  (T. 26-30.)  A review of the record and the ALJ's decision indicates the ALJ considered the evidence in the record and substantial evidence supported her determinations.  Therefore, in assessing Claimant's abilities in the various domains, the ALJ properly considered not only the medical opinion evidence in the file, but also subsequently submitted evidence concerning disciplinary actions at school, teacher statements, and testimony.

Overall, the medical opinion evidence provided by Drs. Ippolito and Meyer was not rendered impermissibly stale by subsequent disciplinary records because the records alone did not support a worsening of symptoms and the ALJ specifically considered the disciplinary records in assessing Claimant's functioning in the various domains.  The ALJ also properly evaluated teacher questionnaires.  The ALJ assessed the medical and other evidence in the record and in determining Claimant's functionality in each domain the ALJ provided sufficient analysis to support her conclusions.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:	September 8, 2020

_____
William B. Mitchell Carter
U.S. Magistrate Judge